IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| MEADWESTVACO CORPORATION and MW CUSTOM PAPERS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, acting through THE GENERAL SERVICES ADMINISTRATION,<br><br>Defendant. | )<br>)<br>) Case No. 1:10-CV-250<br>)<br>) Mattice/Carter<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CONSENT DECREE

This Consent Decree ("Decree") is made and entered into by and between Plaintiffs MEADWESTVACO CORPORATION and MW CUSTOM PAPERS LLC, Delaware corporations with their corporate headquarters located in Richmond, Virginia (collectively, "Plaintiffs" or "MeadWestvaco"), and the UNITED STATES OF AMERICA ("Defendant" or "United States") to settle Plaintiffs' claims against the United States in this case. MeadWestvaco and the United States shall hereinafter be referred to as a "Party," and collectively referred to as the "Parties."

A. Starting around 1913 and spanning approximately 82 years, coke production occurred at the Tennessee Products and Chemical Company coke plant facility, which occupies approximately 24 acres at 4800 Central Avenue in Chattanooga, Tennessee ("Coke Plant").

B. The Coke Plant was first established in 1913 by Chattanooga Gas and Coal Products. The site was later purchased by Chattanooga Coke and Gas Company. In 1926, the Coke Plant was acquired by Tennessee Products and Chemical Company ("Tennessee Products").

B. The United States, through the Defense Plant Corporation, purchased a portion of the Coke Plant property from Tennessee Products in March 1941. The United States also purchased certain equipment for use on the Coke Plant, and leased the land owned by the United States and that equipment back to Tennessee Products in exchange for annual rental payments. The United States sold the portion of the Coke Plant it owned and the associated equipment back to Tennessee Products in June 1946. During the years 1941-1946, Tennessee Products continued to own part of the Coke Plant property and conducted coke-making activities on the Coke Plant.

MeadWestvaco asserts that the United States was an "operator" of the Coke Plant during the period of United States ownership within the meaning of section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 107(a), which the United States denies.

C. Tennessee Products continued its coke-making activities on the Coke Plant after it purchased the portions of the real property and machinery owned by the United States from the United States in June 1946. Tennessee Products sold the Coke Plant to Woodward Iron Co. on or about January 1, 1964.

D. The Mead Corporation, predecessor to MW Custom Papers LLC, acquired the Coke Plant in a merger with Woodward Iron Co. in 1968 and operated the Coke Plant until the Mead Corporation sold the Coke Plant on or about May 31, 1974.

E. Coking operations at the Coke Plant allegedly resulted in the release and discharge of Hazardous Substances, Contaminants or Pollutants (hereinafter defined) from the Coke Plant.

F. The United States Environmental Protection Agency ("EPA") aggregated the Coke Plant area, along with two other areas in the vicinity of the Coke Plant, into one site known as the "Tennessee Products Superfund Site" on the National Priorities List under CERCLA. The Coke Plant portion of the Tennessee Products Superfund Site was later disaggregated from the Superfund Site and removed from the National Priorities List. The Tennessee Department of Environment and Conservation ("TDEC") has assumed regulatory authority over the cleanup activities at the Coke Plant.

G. MeadWestvaco has participated in the investigation and cleanup at the Coke Plant, and asserts that it has incurred $3,666,774.59 of Remediation Work costs as of June 5, 2009.

H. MeadWestvaco has incurred and may incur additional CERCLA response costs after June 5, 2009.

I. On September 3, 2010, Plaintiffs filed their Complaint in this action, alleging that the United States is jointly and severally liable to Plaintiffs, pursuant to CERCLA section 107(a), 42 U.S.C. § 9607(a), for all of their response costs paid on or before June 5, 2009, in investigating and cleaning up the Coke Plant. Plaintiffs alleged alternatively that the United States is liable to Plaintiffs in contribution for some or all of those costs pursuant to CERCLA sections 107(a) and/or 113(f), 42 U.S.C. §§ 9607(a), 9613(f).

J. The Parties now desire to enter into this Decree to reach a full and final resolution of any and all claims that were asserted against the United States by MeadWestvaco or any other person or entity regarding the Past Response Costs as set forth herein, and to avoid the complication and expense of further litigation.

In consideration of the above and other good and valuable consideration, deemed to be sufficient by the Parties, and without resolving any issue of law or fact, the Parties agree as follows:

1. <u>Application of this Decree</u>. This Decree applies to, is binding upon, and inures to the benefit of MeadWestvaco and the United States. This Decree does not extend to or inure to the benefit of any party, person, or entity other than MeadWestvaco and the United States, and nothing in this Decree shall be construed to make any other person or entity not executing this Decree a third party beneficiary to this Decree.

2. <u>Definitions</u>. Unless otherwise expressly provided herein, terms used in this Decree that are defined in CERCLA or it implementing regulations shall have the meaning assigned to them in CERCLA or its implementing regulations as of the date of entry of this Decree. Whenever the terms listed below are used in this Decree, the following definitions shall apply:

 a. "CERCLA" means the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601-75.

 b. "Contaminant" has the same meaning as defined in section 101(33) of CERCLA, 42 U.S.C. § 9601(33).

 c. "Covered Matters" means all claims made or which could be made by MeadWestvaco against the United States in this matter with regard to Past Costs MeadWestvaco paid with regard to the Coke Plant as of June 5, 2009, including, but not limited to, claims made pursuant to CERCLA section 107(a), 42 U.S.C. § 9607(a), for cost recovery and/or contribution, and for contribution pursuant to CERCLA section 113(f), 42 U.S.C. § 9613(f).

 d. "Decree" means this Consent Decree.

 e. "Effective Date" means the date the Court enters this Decree.

 f. "Future Costs" means any response costs incurred by MeadWestvaco after June 5, 2009, arising out of the alleged release or disposal of Contaminants, Pollutants, or Hazardous Substances at the Coke Plant.

 g. "Hazardous Substance" has the same meaning as defined in section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

 h. "Interest" means interest on the terms and conditions and at the rate set forth in CERCLA section 107(a)(4), 42 U.S.C. § 9607(a)(4).

 i. "MeadWestvaco" means MW Custom Papers LLC, MeadWestvaco

- 3 -

Corporation, their parent entities, assignors, subsidiaries, predecessors, successors and all related entities, past and future, as well as their officers, directors, and agents.

j. "Past Costs" means any response costs incurred or paid by MeadWestvaco prior to June 5, 2009, arising out of the alleged release or disposal of Contaminants, Pollutants, or Hazardous Substances at the Coke Plant.

k. "Pollutant" has the same meaning as defined in section 101(33) of CERCLA, 42 U.S.C. § 9601(33).

l. "Response Action" means those certain remedial investigations, feasibility studies, or remediation efforts performed by MeadWestvaco at the Coke Plant.

m. "United States" means the United States of America and all of its agencies, departments and instrumentalities, their officers, agents, and employees, including but not limited to the General Services Administration.

3. Payment by United States.

a. As soon as reasonably practicable after the Effective Date, the United States will pay the sum of $2,016,725.90 to MeadWestvaco. Payment shall be made by electronic funds transfer to MeadWestvaco in accordance with wiring instructions that MeadWestvaco will provide to the United States.

b. If payment is not made in full within 120 days after the Effective Date, then Interest on the unpaid balance shall be paid with Interest beginning to be accrued commencing on the 121st day after the Effective Date. Interest shall accrue at the rate specified for interest on investments of the Hazardous Substance Superfund established under subchapter A of Chapter 98 of Title 26 of the United States Code.

c. Payment by the United States is subject to the availability of funds appropriated for such purpose. No provision of this Decree shall be interpreted as or constitute a commitment or requirement that the United States obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or other applicable provision of law.

d. MeadWestvaco hereby warrants and certifies that as of the date of its execution of this Decree:

i. MeadWestvaco has not been reimbursed or received any payment from the United States, including without limitation payments received pursuant to any contracts between MeadWestvaco and the United States, or from any other source for Past Costs or Covered Matters, except as may be provided pursuant to the "RD/RA Consent Decree" entered in United States v. MW Custom Papers LLC, et al., Civ. Act. No. 1:04-cv-383 (E.D. Tenn.)

- 4 -

("RD/RA Consent Decree");

        ii. Plaintiffs have not claimed as Past Costs hereunder any costs that were reimbursed by the United States, or otherwise, pursuant to the RD/RA Consent Decree;

        iii. Plaintiffs have not been reimbursed or received any payment pursuant to any insurance contract for which the United States paid the premiums or otherwise reimbursed MeadWestvaco; and

        iv. There are no other agreements between MeadWestvaco and the United States potentially releasing the United States from any claims related to the Covered Matters addressed in this Decree, other than as may be reflected in the RD/RA Consent Decree.

4. <u>Release and Covenant Not to Sue by MeadWestvaco to United States</u>.

    a. Upon payment of the payment described in Paragraph 3, MeadWestvaco hereby forever releases, discharges, and covenants and agrees not to assert (by way of the commencement of an action, the joinder of the United States in an existing action or in any other fashion) any and all claims, causes of action, suits or demands of any kind whatsoever in law or in equity that it may have had, or hereafter may have, including, but not limited to, claims under sections 107 and 113 of CERCLA, 42 U.S.C. §§ 9607 and 9613, against the United States arising out of or in connection with Covered Matters.

    b. MeadWestvaco does not release, discharge or provide a covenant not to sue the United States by the provisions of Paragraph 4.a above, with regard to the following, and neither this Consent Decree nor the doctrine of merger and bar shall be deemed to resolve the following:

        i. MeadWestvaco's claims for Future Costs, including any Future Costs arising in the event that TDEC, any other government or government agency, or court of competent jurisdiction requires the United States or MeadWestvaco to perform any investigation or remediation at the Coke Plant after June 5, 2009;

        ii. Claims asserted by any non-Party for personal injury, property damage, diminution in property value, or any other relief sought arising from the alleged release of Hazardous Substances, Pollutants, or Contaminants at or from the Coke Plant, including alleged releases occurring prior to June 5, 2009; and

        iii. Natural resource damages.

   5. <u>Effect of Settlement</u>. This Decree was negotiated and executed by MeadWestvaco and the United States in good faith and at arm's length and is a fair and equitable compromise of claims, which were vigorously contested. Each Party has had the opportunity to obtain, and has obtained to the extent deemed appropriate, legal advice and counsel regarding this Decree. The

Parties agree that neither Party shall be deemed to be the drafter or author of this Decree, and in the event this Decree is subject to interpretation or construction by a court of law, such court shall not construe this Decree or any portion thereof against any Party as the drafter of this Decree. Nothing in this Decree shall constitute nor be construed as an admission of liability by the United States, nor is anything in this Decree an admission or denial of any factual allegation or an admission of violation of any law, rule, regulation, or policy by any of the Parties to this Decree. The provisions of this Decree shall bind and inure to the benefit of the Parties and their respective successors.

6. Protection from Claims. With regard to any claim made against the United States by persons not party to this Decree with respect to Covered Matters, the Parties agree, and the Court finds, that the United States is entitled, as of the date of entry of this Decree, protection from contribution actions or claims as provided 42 U.S.C. § 9613(f)(1), or as may be otherwise provided by law for Covered Matters addressed in this Consent Decree.

7. Tolling Agreement. The Parties agree that they shall consult with one another in the event that MeadWestvaco asserts claims for Future Costs. In order to facilitate such consultations, any statute of limitations applicable to any claim for Future Costs shall be tolled until December 31, 2011.

8. Modifications in Writing. This Decree may be amended, modified, or supplemented only by a writing signed by each of the Parties and approved by the Court. No action taken pursuant to this Decree shall be deemed to constitute a waiver of any other Party's compliance with provisions of this Decree.

9. Dispute Resolution. In the event a dispute arises under the Decree, the Parties agree to meet and confer regarding resolution of the dispute at least once prior to either Party moving the Court to resolve the dispute.

10. Integration. With respect to its subject matter, including without limitation all matters incorporated herein by reference, this Decree is a complete integration and final expression of the Parties' rights and duties, and there are no other agreements or understandings between the Parties to the contrary. All prior discussions, drafts, and writings are specifically superseded by this Decree and may not be used to vary or contest the terms of this Decree. Notwithstanding the foregoing, nothing in this Decree is intended to alter or amend the terms of the RD/RA Consent Decree.

11. Counterparts. This Decree may be executed in counterparts, both of which shall be deemed to constitute one in the same instrument, and each counterpart is deemed to be an original of that instrument.

12. Headings. The headings in this Decree are used solely for convenience and shall not be used to provide any inference, intent, or meaning of the terms of this Decree.

13. <u>Notices</u>. Notices called for by this Decree shall be made by facsimile or email, effective upon receipt, and made to:

    a.    To MeadWestvaco:
Law Department
MeadWestvaco Corporation
Attn: John H. Beasley, Esq.
John.beasley@mwv.com
501 5th Street
Richmond, VA 23219-0501
Phone: 804-327-6372

           Copy to:
Squire, Sanders & Dempsey, L.L.P.
40 North Central Avenue, Suite 2700
Phoenix, AZ 85004-4498
Attn: Christopher D. Thomas, Esq.
Cthomas@ssd.com
Phone: 602-528-4044
Fax: 602-253-8129

    b.    To the United States:

           Chief, Environmental Defense Section
Environment and Natural Resources Division
U.S. Dept. Of Justice
601 D Street, N.W.
Washington, D.C. 2004

           Bernard K. Schafer, J.D., LL.M.
Senior Assistant General Counsel
Real Property Division
U.S. General Services Administration
Office of the General Counsel
1800 F. Street, NW
Washington, D.C. 20405

14. <u>Continuing Jurisdiction of the Court</u>. The Court retains jurisdiction over both the subject matter of the Decree and the Parties for the duration of the performance of the terms and provisions of the Decree for the purpose of enabling any of the Parties to apply to the Court for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of the Decree, or to effectuate or enforce compliance with its terms.

- 7 -

Case 1:10-cv-00250-HSM-WBC   Document 17   Filed 02/16/11   Page 7 of 9   PageID #: 92

15. Authority to Execute Decree. This Decree is voluntarily entered into by the Parties, and the persons executing this Decree each expressly warrant and represent that they are authorized to execute this Decree on behalf of the Party they represent.

16. Court's Finding. Based upon the entire record herein, the Court finds that this Decree is fair, reasonable, and in the public interest.

DONE this 16th day of February, 2011

BY THE COURT:

_____
United States District Judge

FOR MEADWESTVACO CORPORATION:

Dated: August 9, 2010　　By: _John K. Aearley_

Its: ASSISTANT GENERAL COUNSEL

FOR MW CUSTOM PAPERS LLC:

Dated: August 9, 2010　　By: _John K. Aearley_

Its: ASSISTANT GENERAL COUNSEL

FOR THE UNITED STATES:

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division

Dated: July 22, 2010　　By: _Daniel Pinkston_

DANIEL PINKSTON
Environmental Defense Section
Environment and Natural Resources Division
United States Department of Justice
1961 Stout Street, 8th Floor
Denver, Colorado 80294
Email: daniel.pinkston@usdoj.gov

- 8 -

Phone: 303-844-1804
Fax: 303-844-1350

JAMES R. DEDRICK
United States Attorney
SUZANNE H. BAUKNIGHT (B.P.R. 019293)
Assistant United States Attorney
Eastern District of Tennessee
800 Market Street, Suite 211
Knoxville, Tennessee 37902
Phone: 865-545-4167
Suzanne.bauknight@usdoj.gov

Of Counsel:
BERNARD K. SCHAFER
Senior Assistant General Counsel
Real Property Division
U.S. General Services Administration
Office of the General Counsel
1800 F. Street, NW
Washington, D.C. 20405